**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO. ELH-08-086** |
| **KEVIN GARY,** | **UNDER SEAL** |
| **Defendant** | |

### RESPONSE TO DEFENDANT'S MOTION FOR SENTENCING REDUCTION

The United States of America, by counsel, responds to the motion for reduction of sentence filed by the defendant Kevin Gary, pursuant to 18 U.S.C. § 3582(c)(1).  ECF 1670, 1671, 1679, 1683.  For the reasons discussed below, the Court should deny the motion.

### BACKGROUND

The defendant pled guilty to, and is serving a 360-month sentence for, racketeering conspiracy in violation of 18 U.S.C. § 1962(d).  The defendant admitted in the plea agreement (attached as Exhibit 1) to being a member of a gang called the Tree Top Piru (TTP) Bloods.  The gang engaged in numerous criminal activities as part of its business, including murder, other crimes of violence, and drug trafficking.  The defendant's stipulations concerning his own conduct established his participation in and awareness of both the violent and non-violent criminal activities of the gang.  Moreover, the stipulation reflected that the defendant was among the higher-level members of the gang, that he gave orders to other members of the gang, and that members of the gang reported to him.

The defendant stipulated that his own personal conduct as a member of the gang included the following:

- On September 20, 2005, between 11:00pm and midnight, a victim was murdered by members of the gang in a gang-related dispute.  Co-defendant and fellow gang

member Clyde Millner stabbed the victim.  Other members, including Kevin Gary, then kicked and beat the victim until he was finally killed.

- During a recorded wiretap phone call on August 27, 2007, members of the gang sought Gary's advice on how to handle a gang member who was violating gang rules.

- During a recorded wiretap call on August 27, 2007, members of the gang reported to Gary about a task they had carried out, which involved assaulting a person.

- During a wiretap call on November 10, 2007, a gang member asked for a "green light" from Gary so that the members could "eat" members of another gang with whom they were having a dispute.  Gary did not want to discuss that matter on the phone, and directed the other gang member to "holler at me on the close up."

- During a wiretap call on November 15, 2007, Gary ordered another gang member to "sanction" another member of the gang, but to "just beat him though."

- On February 15, 2008, during a wiretap call, Gary told other members of the gang to rob non-gang members who were selling drugs on gang territory.

- During a series of wiretap phone calls, Gary sought to have jailed members of the gang murder another inmate, because Gary believed the inmate had killed Gary's brother.  Gary demanded an explanation from the others as to why the murder had not taken place, and suggested contacting the intended victim's cellmate.

- Finally, Gary and other members of the gang discussed ways to obstruct justice in connection with trials of gang members.  That included identifying cooperating witnesses and making it uncomfortable for cooperating witnesses to testify.

*See* Exhibit 1 at Attachment A (statement of facts).

In the plea agreement, the parties jointly recommended a sentence of 30 years imprisonment.  Exhibit 1 at ¶ 9.  The Court accepted the C-plea, and sentenced the defendant to 30 years incarceration.  ECF 513.

The defendant now seeks a reduction of his sentence to time served.

**ARGUMENT**

The defendant has exhausted the administrative requirements associated with a First Step Act sentencing reduction request.  Accordingly, the government will address the substantive requirements for such a reduction.

A court considering a reduction of sentence under the compassionate release provision of the First Step Act must conduct the following inquiries:

> **First**: The Court must determine if an inmate is eligible[1] for a sentence reduction that is: (A) warranted by "extraordinary and compelling reasons"; and (B) consistent with applicable Sentencing Commission Policy Statements.
>
> **Second**: If the Court finds the inmate is eligible for compassionate release, it must then consider whether a sentence reduction is warranted according to the factors set forth in 18 U.S.C. § 3553(a).

*See* 18 U.S.C. § 3582(c)(1)(A); *see also Dillon v. United States*, 560 U.S. 817, 826-27 (2010) (holding that parallel language in Section 3582(c)(2) establishes a similar two-step inquiry)).  The burden is on the inmate to demonstrate that he has exhausted administrative remedies and that there are extraordinary and compelling reasons to reduce his sentence. 18 U.S.C. § 3582(c)(1)(A); *United States v. Spivey*, 2020 WL 3618989, at *1 (D. Md. July 2, 2020) (Hazel, J.) ("The defendant generally bears the burden of establishing that a sentence reduction is warranted.") (quoting *United States v. Barringer,* 2020 WL 2557035 (D. Md. May 19, 2020)).

---

[1]     Certain defendants at least 70 years old are eligible for sentence reductions, a provision not applicable in the instant case. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

## II.     EXTRAORDINARY AND COMPELLING CIRCUMSTANCES.

bases for a finding of extraordinary and compelling circumstances, as well as 18 U.S.C. § 3553(a)

factors supporting a lower sentence.  The government will attempt to address those issues under

both prongs of the two-pronged test discussed in *Dillon*.







First, conditions within the BOP have improved dramatically since the defendant's illness and the events described in his memorandum. The defendant's filings focus on the conditions at Fort Dix several months ago. *See* ECF 1670 generally, 1671 at 9. Since then, however, and over the recent months, the situation at Fort Dix (and elsewhere in the BOP system) has changed for the better. The BOP has taken aggressive steps to vaccinate its inmate and staff populations. At Fort Dix, at the present time, 1485 inmates (out of 2781 total inmates) have been vaccinated, along with 247 staff. *See* https://www.bop.gov/coronavirus/ (visited June 6, 2021).

Second, the current status at Fort Dix indicates that there is no outbreak of COVID-19 at the facility at this time:

| Facility ▲ | Inmates Positive | Staff Positive | Inmate Deaths | Staff Deaths | Inmates Recovered | Staff Recovered | City | State |
|---|---|---|---|---|---|---|---|---|
| Fort Dix FCI | 0 | 0 | 2 | 0 | 1767 | 93 | Joint Base Mdl | NJ |

https://www.bop.gov/coronavirus/ (visited June 6, 2021). There are currently zero COVID-19 cases at the facility. The government understands that the COVID-19 numbers may change, and the past positive numbers of 1767 cases, including two inmate deaths, certainly warrant attention. However, at this time, the situation at Fort Dix simply does not show any kind of outbreak

situation.  Combined with the fact that BOP inmates are being vaccinated, the circumstances reflect

a minimal continuing risk to the defendant.







**B.      Other Arguments for Extraordinary and Compelling Circumstances**

The defendant also points to his post-conviction accomplishments and rehabilitation. Without minimizing the defendant's substantial accomplishments, the government respectfully does not believe that they present "extraordinary and compelling circumstances" warranting a reduction of his sentence.

████████████████████████████████████████████████████████████████████he defendant's motions fundamentally rely on his rehabilitation since entering BOP.  However, post-offense rehabilitation alone is not a basis for compassionate release under § 3582(c)(1)(A). Congress has placed certain statutory limitations on the scope of compassionate release motions, including:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

18 U.S.C. § 994(t) (emphasis added).[2]  Rehabilitative efforts such as those undertaken by the defendant are commendable, but not a basis for a reduction of sentence, at least by themselves.[3] *See United States v. Washington,* 2019 WL 6220984, at *2 (E.D. Ky. Nov. 21, 2019) (the

---

[2]      *McCoy* states that the Sentencing Commission's policy statements are not binding on the Court.  But the limitation cited above is not a guidelines policy statement, but a statute. Accordingly, § 944(t) is applicable in this case.

[3]      To be clear, if a defendant makes a threshold showing of extraordinary and compelling circumstances, then rehabilitative efforts would be quite relevant to applying the next prong of a § 3582(c)(1)(A) motion: whether the § 3553(a) factors support a reduction of sentence.  *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)).  But rehabilitation cannot be a sole basis for satisfying the *first* prong of a compassionate release motion.

defendant's claim that he "has an ideal prison record and is the prototype of a successfully rehabilitated individual" does not present an extraordinary circumstance, because "Title 28 of the United States Code, section § 994(t) -- a subsection unaltered by the Act -- provides that while the Sentencing Commission shall promulgate policy statements concerning the definition of 'extraordinary and compelling reasons,' '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *United States v. Flowers*, 2020 WL 4495454, at * 3 (D. Alaska Aug. 3, 2020) ("Mr. Flowers also maintains that his efforts toward rehabilitation warrant his release. But 28 U.S.C. § 994(t) provides that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.' Thus, while the Court commends Mr. Flowers for completing several classes, this cannot serve as the basis for compassionate release."); *United States v. Wieber*, 2020 WL 1492907, at *3 (W.D. Ky. Mar. 27, 2020) (collecting cases).

The government acknowledges that the defendant's motion is not *solely* based on his post-conviction rehabilitation, but also on COVID-19. Section 994(t) states that "rehabilitation alone" cannot be a basis for an extraordinary/compelling finding, and courts have distinguished 3582 motions basely solely on rehabilitation from motions in which rehabilitation was one part, along with other components, in support of a motion. *See, e.g., United States v. Campbell*, 2020 WL 4432845, at *5 (N.D. Iowa July 31, 2020) ("A number of district courts have held that the natural reading of § 994(t) is that a defendant's rehabilitation may be part of the extraordinary and compelling reasons calculation if it is coupled with other reasons.") (citing cases). In this particular case, the government would suggest that even the combination and totality of the defendant's claims is not sufficient to show extraordinary and compelling circumstances. The defendant asserts two factors ████████████████████████████████████████████████

nd one that is not legally sufficient, at least alone, that is his rehabilitation. The combination of those two inadequate claims should not be sufficient to establish a threshold finding of extraordinary and compelling circumstances.

Put another way, if linking one's rehabilitation to a largely non-existent COVID-19 risk is enough to get around 28 U.S.C. § 994's restriction on rehabilitation-only claims, then every BOP prisoner could make the same argument. That would render § 994's restriction functionally void.

Accordingly, the government does not believe that the defendant has shown extraordinary and compelling circumstances. However, the government will address the § 3553(a) factors on the assumption that the Court may disagree.

## III.    FACTORS SET FORTH UNDER 18 U.S.C. § 3553(a).

Even if a defendant has met the threshold requirements for compassionate release, the Court must still consider whether a sentence reduction is warranted according to the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *see also Dillon*, 560 U.S. at 826-27 (holding that parallel language in Section 3582(c)(2) establishes a similar two-step inquiry).

Section 3553(a) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes described in § 3553(a)(2):

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).  Those factors do not support release in this case.

### A.     Nature and Seriousness of the Offense.

Certainly the nature and seriousness of the offense warranted, and continue to warrant, a substantial and lengthy sentence.  *See* Exhibit 1, plea agreement, at Attachment A.  Numerous aspects of the case stand out with respect to its seriousness:

- The defendant's admitted conduct makes clear that he was a high-level member of the gang.  He gave orders to other gang members, including to commit acts of violence.  He received information from other gang members about gang activity, including violent crimes.

- The defendant and the gang engaged in obstruction of justice in order to protect the gang and its members.  That activity included attempting to manufacture evidence to help charged gang members, and intimidating witnesses.

- The defendant personally participated in the murder of one person to enforce the rules of the gang.

- The defendant not only instructed other members of the gang to commit the murder of someone he believed had murdered his brother, but he also demanded to know why the murder had not taken place.

The facts reflect a complex, continuing, violent offense, involving numerous participants in a racketeering enterprise.  A substantial sentence was necessary and appropriate.  It was necessary to reflect the seriousness of the offense, and to provide just punishment for someone who helped run an organization that planned murder.  It was necessary in order to protect the public from further crimes by the defendant (at least at the time of the sentence – the government acknowledges that this necessity has diminished with time given the defendant's current age and his efforts in BOP).  It was necessary in order to send an appropriate message of general deterrence to persons choosing to participate in or join a violent criminal organization.

The defendant's accomplishments do rebut some of this.  The defendant has done very well in BOP, he has improved himself, and he has improved the lives of others.  He has a substantial

array of support for his request.  Nonetheless, the case remains a very serious one, and the facts of the offense support the sentence imposed on the defendant.

### B.        History and Characteristics of the Offender

The defendant's past criminal history generally supports denial of the motion, although there are aspects that cut both ways on the issue.  The defendant's criminal history (shown in the presentence report) showed several significant convictions, including a robbery in 2000, a possession with intent to distribute in 2000, and another possession with intent to distribute in 2000.  PSR ¶ 45-49.  The defendant was on probation for the 2000 PWID convictions when he committed the instant offense.  PSR ¶ 53.  The picture from the criminal history is problematic, although slightly mixed: the convictions were serious, one of the convictions was for a violent crime, and the defendant did not do well on judicial supervision.  At the same time, the defendant was 18 or 19 years old during the crimes and they all occurred during a single year, 2000.  Overall, the criminal history is not ideal, and it appears to have led into the defendant's instant offense, which was a continuing membership in a criminal gang.

The defendant's BOP disciplinary history (attached as Exhibit 6) is actually better for his case.  The defendant's disciplinary history, generally, is mild.  The defendant has four infractions during the years he has been in BOP custody (more than a decade): a 2021 failure to obey;  a 2020 possession of a dangerous tool; a 2013 violation for being insolent to a staff member; and a 2011 violation for disrupting phone monitoring.  This is not a perfect record, but there is no violence and does not suggest an ongoing danger to the community.

The aforementioned information (criminal and disciplinary history) represents a significant parts of the defendant's past history. At the same time, the defendant's motion places another aspect of his personal history front and center: his rehabilitation and BOP accomplishments.  As

discussed already, the defendant points to a number of impressive accomplishments, none of which the government seeks to minimize.  The defendant has improved himself, he is working to improve others, and he has earned the respect and commendation from a number of people who support his request for release.  ECF 1683 (letters and recommendations to the defendant in support of his motion).

Although the defendant's accomplishments are impressive, the issue here is whether they warrant the massive reduction of sentence the defendant seeks, in comparison to the other 3553(a) factors.  Respectfully, the government believes that the balance of factors supports denial of the motion.  The defendant has done very well, but his good accomplishments in BOP do not undercut the continued need for a significant sentence.   Other courts have addressed the issue of rehabilitation and post-offense accomplishment in a variety of factual contexts, and the decisions indicate the query is very fact-sensitive.  *See, e.g., United States v. High*, 997 F.3d 181, 190 (4th Cir. 2021) (finding no abuse of discretion in denial of 3582(c)(1)(A) motion, even where defendant had earned GED and completed various BOP programs, although the accomplishments were positive factors); *United States v. Martin*, 916 F.3d 389 (4th Cir. 2019) (pointed to the defendant's "mountain of new mitigating evidence," including securing her GED, becoming a respected tutor, exhibiting "exemplary behavior while incarcerated," and generally her "her old age and marked rehabilitation," as factors supporting a reduction, and remanding for further explanation by district court on denial); *United States v. Martin*, 2020 WL 3447760, at * 5 (D. Md. June 24, 2020) (Chasanow, J.) (granting 3582(c)(1)(A) motion to co-defendant in *Martin* case).

All of this shows that the defendant's rehabilitative efforts are a worthy 3553(a) consideration.  But they cannot eclipse the other 3553(a) factors here including the facts of the case and the scope of the crime.  Additionally, if good post-conviction conduct is enough to trigger

a 3553(a) sentencing reduction, then there is a risk that such reductions will become the norm, rather than the extraordinary and rare remedy contemplated by § 3582(c)(1)(A).

###### C.      The Need for the Sentence

As discussed above, the key 18 U.S.C. § 3553(a)(2) factors in this case, in the government's view, are the following: the need to reflect the seriousness of the offense (a gang case in which the defendant played a leadership role), and the need to afford adequate general deterrence (in a crime of violence case).  Because this case involved a violent crime, and the defendant both was a leader in the gang and also a direct participant in violent activities, there is a need for the sentence to protect the community.  That said, the government acknowledges that the danger posed by the defendant is greatly lessened from when he was sentenced.

In balancing the aforementioned § 3553(a) factors with the defendant's health issues and his claim for early release, the government believes the following factors support maintaining the current sentence and denying the defendant's motion.

Second, the measures in place at BOP combined with the current state of affairs at Fort Dix reflect a minimal risk to the defendant from COVID-19.  Fort Dix has zero COVID-19 cases at this time.

Finally, as discussed above, there is still a need to address the seriousness of the crime and to maintain a sentence that is proportional to the offense – helping to operate a gang that engaged

in murder and violence.

The government does wish to note the following: the government found this to be a closer call than it initially expected.  The defendant has done very well during his incarceration, appears to have become a different person, has the support of a number of people, and is contributing positively to his own life and to others.  This should be encouraged.  Although the government opposes release or reduction in this case, it should be noted that the Court does not have to make a stark choice between immediate release (as urged by the defendant) or denial of the motion. Section 3582(c)(1)(A) permits a Court to grant a motion to reduce sentence, and does not limit the Court to a choice between immediate release or complete denial.

Although the government opposes any modification to the sentence, it will make a recommendation in case the Court decides that some reduction is appropriate.  Any reduction of sentence should be designed to have the defendant serve an appropriate period of time for the conviction, while also recognizing that the defendant has improved himself considerably and is approaching readiness to return to society.  The defendant's current release date is 2032.  A reduction of sentence by 60 months would roughly result in a release in approximately 2026.  If the Court believes that any reduction is appropriate, the government suggests a 60-month reduction would strike a proper balance between the competing considerations in this case.

## CONCLUSION

The government respectfully requests that the Court deny the defendant's motion for a sentence reduction.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney


By:_____/s/_____
Michael C. Hanlon
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
410-209-4895
Michael.hanlon@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing will be sent by email to:

>Kevin Gary, pro se
>Reg. No. 43319-037
>FCI FORT DIX
>FEDERAL CORRECTIONAL INSTITUTION
>P.O. BOX 2000
>JOINT BASE MDL, NJ  08640

>_____/s/_____
>Michael C. Hanlon
>Assistant United States Attorney